IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN FLETCHER and GARRETT FLETCHER,<br><br>      Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 25-cv-03685 |

COMPLAINT

Bryan Fletcher and Garrett Fletcher (together, "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademark and/or unauthorized copies of Plaintiff's federally registered copyrighted works to residents of Illinois (collectively, the "Unauthorized Rainbow Friends Products"). Each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Rainbow Friends Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Rainbow Friends Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing Unauthorized Rainbow Friends Products over the internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion,

dilution, and tarnishment of its valuable trademark and infringement of its copyrighted works as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff Bryan Fletcher is an individual who resides in the State of Alabama. Plaintiff Garrett Fletcher is an individual who resides in the State of Idaho.

5. Long before Defendants' acts described herein, Plaintiff created the Rainbow Friends online video game in 2021. When it launched, Rainbow Friends immediately became an enormously successful online video game experience and a global phenomenon. Rainbow Friends is carried exclusively on www.roblox.com ("Roblox"),[2] a premier online gaming platform.

6. Out of more than 29 million games that are live on the Roblox platform since its launch, Rainbow Friends has consistently performed as a top-twenty game.[3] Rainbow Friends is played each day by gamers from 180 countries around the world, including the United States.

7. The Rainbow Friends video game has gained wide exposure on platforms such as YouTube and Twitch. For example, playthrough videos of Chapter 1 of Rainbow Friends have received millions of views on YouTube. As such, the Rainbow Friends trademark and characters are invaluable assets of Plaintiff's business.

8. Rainbow Friends is a survival horror game that involves an unnamed protagonist who is kidnapped during a school trip to an amusement park. The player must solve puzzles and

---

[2] Over the past two decades, Roblox, now a $22 billion company, has developed one of the top online platforms for games and other experiences. The success of Roblox's platform is based on its innovative, groundbreaking technology and content that Roblox provides to its users and developers for use on the platform. As of the three (3) months ending on September 30, 2022, there were, daily, 58.8 million active users and 13.4 billion engagement hours. Roblox users include half of children under 16 in the United States who come to Roblox to play, learn, explore, and expand their relationships in 3D digital simulations like Rainbow Friends.

[3] Its top-twenty ranking is based on player popularity and earning results.

3

complete tasks in order to progress further, all while avoiding the game's main antagonist, Blue, a large humanoid figure. Blue and other characters associated with the game have gained significant popularity and are invaluable assets of Plaintiff. Some of the Rainbow Friends characters are displayed in the following chart:

| | |
|---|---|
| Blue | |
| Green | |
| The Scientist | |

| | |
|---|---|
| Orange | |
| Pink | |
| Purple | |

9. In addition to the popular video game, a variety of authorized products are available including apparel, household items such as bathroom products and bedding, stationery, stickers, phone cases, tote bags, and backpacks (collectively, the "Rainbow Friends Products").

10. Rainbow Friends Products are distributed and sold to consumers through authorized retailers in the United States, including retailers in Illinois. Genuine Rainbow Friends Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with Plaintiff's Rainbow Friends game and brand.

11. Plaintiff has used its RAINBOW FRIENDS trademark (the "RAINBOW FRIENDS Trademark") for many years in connection with the Rainbow Friends video game and related line of Rainbow Friends Products and has continuously sold products under the RAINBOW FRIENDS Trademark. As a result of this long-standing use, strong common law trademark rights have amassed in the RAINBOW FRIENDS Trademark. Plaintiff's use of the mark has also built substantial goodwill in and to the RAINBOW FRIENDS Trademark. Plaintiff has registered the below RAINBOW FRIENDS Trademark with the United States Patent and Trademark Office.

| Registration No. | Trademark |
|---|---|
| 7,199,928<br>7,395,365<br>7,389,327<br>7,430,266 | RAINBOW FRIENDS |

12. The above U.S. registrations for the RAINBOW FRIENDS Trademark are valid, subsisting, and in full force and effect. The registrations for the RAINBOW FRIENDS Trademark constitute *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the RAINBOW FRIENDS Trademark pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed RAINBOW FRIENDS Trademark are attached hereto as **Exhibit 1**.

13. The RAINBOW FRIENDS Trademark is distinctive when applied to the Rainbow Friends Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself

6

or contracts with others to do so, Plaintiff has ensured that products bearing the RAINBOW FRIENDS Trademark are manufactured to the highest quality standards.

14. The RAINBOW FRIENDS Trademark is a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and has been continuously used and never abandoned. The innovative marketing and product designs of the Rainbow Friends Products have enabled the Rainbow Friends brand to achieve widespread recognition and fame, making the RAINBOW FRIENDS Trademark one of the most well-known marks in the video game industry. The widespread fame and significant goodwill associated with the Rainbow Friends brand have made the RAINBOW FRIENDS Trademark a valuable asset of Plaintiff.

15. Plaintiff has expended substantial time, money, and other resources in advertising and promoting the RAINBOW FRIENDS Trademark. Rainbow Friends Products have also been the subject of extensive unsolicited publicity resulting from their fame and innovative designs. As a result, products bearing the RAINBOW FRIENDS Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Rainbow Friends Products have become among the most popular of their kind. The RAINBOW FRIENDS Trademark has achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the mark. As such, the goodwill associated with the RAINBOW FRIENDS Trademark is of incalculable and inestimable value to Plaintiff.

16. Plaintiff has also registered its Rainbow Friends copyrighted works (the "Rainbow Friends Copyrighted Works") under U.S. Copyright Registration No. PA 2-377-605, issued by the Register of Copyrights on October 31, 2022. A true and correct copy of the U.S. federal copyright registration certificate for the Rainbow Friends Copyrighted Works is attached hereto as **Exhibit 2**.

17. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Rainbow Friends Copyrighted Works to the public.

18. Rainbow Friends Products typically include the registered RAINBOW FRIENDS Trademark and/or one or more of the Rainbow Friends Copyrighted Works. As such, Rainbow Friends Products are recognized by the public as being exclusively associated with the Rainbow Friends brand.

**The Defendants**

19. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

20. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

21. The success of the Rainbow Friends video game and brand has resulted in significant counterfeiting of the RAINBOW FRIENDS Trademark and copying of the Rainbow Friends Copyrighted Works. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Rainbow Friends Products on online marketplace platforms such as Amazon, eBay, Alibaba, Walmart, Temu, and PayPal including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[4] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[5]

22. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[6] Counterfeiters hedge against the risk of being caught and having their websites taken

---

[4] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[5] *Id*.
[6] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[7] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[8] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[9]

23. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Unauthorized Rainbow Friends Products to residents of Illinois.

24. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the RAINBOW FRIENDS Trademark or copy or distribute the Rainbow Friends

---

[7] *Id.* at p. 22.
[8] *Id.* at p. 39.
[9] Chow, supra note 6, at p. 186-87.

Copyrighted Works, and none of the Defendants are authorized retailers of genuine Rainbow Friends Products.

25. Many Defendants also deceive unknowing consumers by using the RAINBOW FRIENDS Trademark without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for Rainbow Friends Products. Other e-commerce stores operating under Seller Aliases omit using the RAINBOW FRIENDS Trademark in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rainbow Friends Products.

26. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

27. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Rainbow Friends Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

28. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration

patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Rainbow Friends Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Rainbow Friends Products were manufactured by and come from a common source and that Defendants are interrelated.

29. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

31. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Rainbow Friends Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the RAINBOW FRIENDS Trademark and/or copies of the Rainbow Friends Copyrighted Works in connection with the advertisement,

distribution, offering for sale, and sale of Unauthorized Rainbow Friends Products into the United States and Illinois over the internet.

32. Defendants' unauthorized use of the RAINBOW FRIENDS Trademark and/or copies of the Rainbow Friends Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Rainbow Friends Products, including the sale of Unauthorized Rainbow Friends Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered RAINBOW FRIENDS Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RAINBOW FRIENDS Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Rainbow Friends Products offered, sold, or marketed under the RAINBOW FRIENDS Trademark.

35. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the RAINBOW FRIENDS Trademark without Plaintiff's permission.

36. Plaintiff's United States Registrations for the RAINBOW FRIENDS Trademark (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the RAINBOW FRIENDS Trademark and are willfully infringing and

intentionally using infringing and counterfeit versions of the RAINBOW FRIENDS Trademark. Defendants' willful, intentional, and unauthorized use of the RAINBOW FRIENDS Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Rainbow Friends Products among the general public.

37. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its RAINBOW FRIENDS Trademark.

39. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Rainbow Friends Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Rainbow Friends Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Rainbow Friends Products by Plaintiff.

42. By using the RAINBOW FRIENDS Trademark in connection with the sale of Unauthorized Rainbow Friends Products, Defendants create a false designation of origin and a

14

misleading representation of fact as to the origin and sponsorship of the Unauthorized Rainbow Friends Products.

43. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Rainbow Friends Products to the general public involves the use of a counterfeit mark and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of its Rainbow Friends brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

45. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

46. The Rainbow Friends Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

47. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Rainbow Friends Copyrighted Works. The Rainbow Friends Copyrighted Works are protected by the U.S. Copyright Registration No. listed in Paragraph 16, which was duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the Rainbow Friends Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

48. The Rainbow Friends Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Rainbow Friends Copyrighted Works via the internet.

49. Without authorization from Plaintiff or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivate works incorporating the Rainbow Friends Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Rainbow Friends Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Rainbow Friends Copyrighted Works. Such conduct infringes and continues to infringe the Rainbow Friends Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

50. Defendants reap the benefits of the unauthorized copying and distribution of the Rainbow Friends Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Rainbow Friends Products.

51. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Rainbow Friends Products that capture the total concept and feel of the Rainbow Friends Copyrighted Works.

52. On information and belief, Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

53. Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

54. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Rainbow Friends Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the RAINBOW FRIENDS Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Rainbow Friends Product or is not authorized by Plaintiff to be sold in connection with the RAINBOW FRIENDS Trademark;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Rainbow Friends Copyrighted Works in any manner without the express authorization of Plaintiff;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rainbow Friends Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the RAINBOW FRIENDS Trademark and/or the Rainbow Friends Copyrighted Works;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Rainbow Friends Products are those sold under the authorization,

    control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

  e. further infringing the RAINBOW FRIENDS Trademark and/or the Rainbow Friends Copyrighted Works and damaging Plaintiff's goodwill; and

  f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's RAINBOW FRIENDS Trademark or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Rainbow Friends Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Amazon, eBay, Alibaba, Walmart, Temu, and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the RAINBOW FRIENDS Trademark and/or which bear the Rainbow Friends Copyrighted Works;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the RAINBOW FRIENDS Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the RAINBOW FRIENDS Trademark;

5) As a direct and proximate result of Defendants' infringement of the Rainbow Friends Copyrighted Works, Plaintiff is entitled to damages, as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 7th day of April 2025.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Luana Faria de Souza
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 W. Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
lfaria@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiffs*
*Bryan Fletcher and Garrett Fletcher*